IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SAMUEL L. PHILLIPS,
    Plaintiff,

vs.                                    Case No. 3:06cv564/LAC/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act (Act) and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB).

    Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.     PROCEDURAL HISTORY

    This suit involves an application for DIB under Title II of the Act, 42 U.S.C.§§ 401–34, which was filed by Plaintiff on May 20, 2003, and is at least Plaintiff's <u>eleventh</u> application for DIB

(Tr. 17, 85–87).[1] The instant application, alleging disability since May 2, 1976, was denied initially and on reconsideration (*id.*, Tr. 43–49, Tr. 52–58). On February 5, 2004, an administrative law judge (ALJ) dismissed Plaintiff's request for a hearing, finding that his insured status had expired on September 30, 1979, and that his current request for a hearing involved facts and issues which had previously been decided in final and binding determinations (Tr. 39–42). The ALJ found no basis upon which to reopen the prior unfavorable determinations (Tr. 41).

Plaintiff requested review of the ALJ's decision, and on April 2, 2004, the Appeals Council vacated the decision and remanded Plaintiff's case, directing the ALJ to make a new determination as to whether Plaintiff met the requirements of a listed impairment, noting that the Social Security Administration (SSA) established new medical criteria for the musculoskeletal listings on September 20, 2000 (Tr. 70). On April 18, 2005, following a hearing, the ALJ rendered a decision in which he found that Plaintiff was not under a "disability" within the meaning of the Act (Tr. 12–35). On November 1, 2006, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 5–8A). Thus, the decision of the ALJ stands as the final decision of the commissioner, subject to review in this court. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.[2]

II.  FINDINGS OF THE ALJ

On April 18, 2005, the ALJ made several findings relative to the issues raised in this appeal (Tr. 15–35):

1)  Plaintiff's last date of disability insurance status coverage was September 30, 1979 (20 C.F.R. §§ 404.130 and 404.131). Plaintiff must therefore establish that his disability began on or before September 30, 1979, and has since remained unabated

---

[1] All references to "Tr." refer to the Transcript of Social Security Administration Record filed on March 13, 2007 (Doc. 5).

[2] The ALJ's opinion begins by noting the "lengthy and tortuous procedural history" of this case "with respect to multiple prior disability claims" filed by Plaintiff (Tr. 15). The ALJ then describes in detail the numerous previous adjudicative proceedings and results (*see* Tr. 15–18). The undersigned does not find it necessary to repeat the lengthy procedural history here, but notes the ALJ's repeated caution that the time frame and issues relevant to this appeal are limited; namely, "whether the revised Musculoskeletal 'Listing' provisions of September 2000 set forth a viable evidentiary basis to find, retrospectively, [Plaintiff] presumptively medically disabled on or before September 1979" (*see, e.g.*, Tr. 18). Thus, the time frame relevant to this appeal is more than twenty-seven years ago, from May 2, 1976 (alleged onset) to September 30, 1979 (date last insured). Additionally, the undersigned notes that in 1997, Plaintiff was found entitled to Supplemental Security Income benefits as of June 6, 1990 (*see* Tr. 17; Doc. 10 at 3, n.2).

        at the same disabling level of severity, in order to obtain in the benefits in connection with his application filed in May 2003 (20 C.F.R. §§ 404.315, 404.316, 404.320 and 404.321).

2)       The record does not clearly document that Plaintiff has performed substantial gainful activity (SGA) since his alleged disability onset date of May 2, 1976.

3)       Plaintiff had severe musculoskeletal impairments prior to September 30, 1979, but they were not of a presumptively disabling level of severity, as described in any section listed in Part A to Appendix I, Subpart P, Social Security Regulations No. 4 for the musculoskeletal system (as revised in September 2000).

4)       Plaintiff's allegations of chronic debilitating pain in his lumbar spine; pain, muscle weakness, and sensory loss in the legs; and other related symptoms of a presumptively disabling nature as of September 30, 1979, are not considered credible to extent he described.

5)       A re-adjudication of Plaintiff's disability allegations for the period extending through his insured status expiration, in light of September 2000 regulatory revisions, does not engender a result different from that already reached by six other ALJs and the SSA [Social Security Administration] in connection with no less than ten prior benefit claims.

## III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote

v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any SGA by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing SGA, he is not disabled.

2. If the claimant is not performing SGA, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing SGA and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PERTINENT BACKGROUND INFORMATION AND MEDICAL HISTORY

A.      Background

On or about May 9, 1976, Plaintiff injured his back at work while lifting a side of beef (Tr. 108, 219; Doc. 10 at 4). He received treatment at Sacred Heart Hospital (Sacred Heart) shortly thereafter, and has undergone surgeries and seen numerous doctors over the last thirty years. At Plaintiff's hearing on the instant claim, which was in August 2004 (*see* Tr. 223), he testified that he has not worked since his injury (*see* Tr. 227). He further noted that he has been receiving income in the form of Social Security Income and Worker's Compensation benefits at varying times since his injury (*see* Tr. 226–27).

B.      Relevant Medical History

As noted by Plaintiff's counsel, the medical records section of Plaintiff's file contains fourteen exhibits (excluding a professional qualifications exhibit), but only three exhibits contain records that precede Plaintiff's date last insured (Doc. 10 at 4). They are Exhibit 1F, medical records from Virgillio Barangan, M.D., of Sacred Heart Hospital (Tr. 112–15), Exhibit 2F, medical records from Clayton E. Linkous, M.D. (Tr. 116–24), and Exhibit 3F, medical records from Michael T. Hartsfield, M.D., of the Medical Center Clinic (Tr. 125–27).

With regard to Dr. Linkous, the record reflects that Plaintiff began treatment on May 11, 1976, after the work-related injury to his back (Tr. 117). In a letter to Plaintiff's attorney dated April 26, 1977, Dr. Linkous described the course of Plaintiff's treatment (*see* Tr. 117–18). Dr. Linkous

noted that during May 1976 Plaintiff had mild to moderate tenderness and muscle spasms in the lower back (Tr. 117). Plaintiff was prescribed medication, bed rest, and a lumbar-sacral back support (*id.*). In June 1997, Plaintiff reported feeling worse, he continued to have moderate tenderness in the lower back, and he was continued on medication and bed rest (*id.*). On August 7, 1976, Dr. Linkous noted continued mild tenderness, but he also noted "signs of improvement" (Tr. 118). On August 31, 1976, mild tenderness was again noted, but Plaintiff had a full range of motion, and it was recommended that bed rest continue for only five more days (*id.*). On September 9, 1976, Dr. Linkous advised Plaintiff to return to normal activity with the exception of no heavy lifting for four to six weeks (*id.*). Dr. Linkous continued to treat Plaintiff through March 1977, generally noting mild to moderate tenderness in Plaintiff's lower back, mild muscle spasms and pain, and continuing to prescribe medication and heat packs (*see id.*). Dr. Linkous wrote a letter "to whom it may concern" on May 4, 1977, in which he opined that it was "doubtful" Plaintiff would ever be able to return to gainful employment (Tr. 116).

Sacred Heart records, although difficult to decipher, appear to reveal that Plaintiff was referred there (to Dr. Barangan) due to his complaints of low back pain (Tr. 115). Upon Plaintiff's initial presentation, on March 30, 1977, he was diagnosed with low back pain, it was noted that he had previously responded well to steroid blocks, and it was therefore recommended that Plaintiff undergo additional blocks (*id.*). The records further reflect that on March 31, 1977, Plaintiff received an epidural steroid injection (Tr. 114–15), and a second epidural steroid injection on April 21, 1977 (Tr. 112). On April 21, 1977, it was noted that Plaintiff should continue with his "current ortho-physiotherapy, analgesics, and muscle relaxants," and that nerve stimulation could be considered (*id.*). If Plaintiff did not respond well, additional blocks were to be scheduled (*id.*).

On December 29, 1977, Plaintiff presented to orthopedic surgeon Michael Hartsfield, M.D., for a consultative physical evaluation (Tr. 126–27). Dr. Hartsfield noted that he had previously treated Plaintiff for a fracture of the left femur and ankle (*id.*). Plaintiff reported that he began to experience back pain in May 1976 after lifting a heavy box at work (*id.*). Dr. Hartsfield noted that Plaintiff had undergone x-rays which were "thought largely to be negative for pathology; a negative lumbar myelogram and I think also a negative epidural venogram" (*id.*). Examination showed that Plaintiff was able to walk "normally," as well as walk on his heels and toes, and he could squat (*id.*).

Plaintiff could also bend forward within two feet of the floor and could twist and fully extend his back (*id.*). Plaintiff had "normal" motor strength in all lower extremity muscle groups, and sensory examination was "entirely within normal limits" (Tr. 126–27). Straight leg raise testing was positive, and there was tenderness in the lumbosacral area, but Plaintiff had no muscle spasm (Tr. 127). X-rays revealed "only some asymmetrical facets and very slight narrowing at L5–S1" (*id.*). Dr. Hartsfield assessed a 5 percent permanent physical impairment (*id.*).

Some records that postdate Plaintiff's date last insured appear relevant to the issues in this case and are summarized next. Although somewhat difficult to decipher, records from orthopedic surgeon Leo Flynn, M.D., appear to reflect treatment from on or about March 13, 1980 (*see* Tr. 139) through April 1982 (*see* Tr. 128). Dr. Flynn diagnosed Plaintiff with chronic low back pain and characterized Plaintiff's treatment as "conservative" (i.e., diagnostic testing and medication only) (*see, e.g.*, Tr. 134, 138). In February 1982, Dr. Flynn referred Plaintiff to Chris Webb, M.D., for a consultative evaluation (*see* Tr. 131). Dr. Webb's report indicates that Plaintiff described his May 1976 back injury and history of low back pain, as well as the steroid blocks he had received and the 1977 myelogram, which Plaintiff characterized as "normal" (Tr. 131). Dr. Webb diagnosed Plaintiff with chronic low back pain syndrome (Tr. 132). In March 1982, Dr. Flynn opined that Plaintiff had a 50 percent impairment rating of the spine (Tr. 130). In April 1982, Dr. Flynn recommended that Plaintiff be seen by Dr. LaRocca at the Touro Infirmary in New Orleans, Louisiana (Touro) (Tr. 128, 148).

A lumbar myelogram performed by Dr. LaRocca on September 28, 1982, showed "relatively minimal" findings of asymmetry in the lateral margins of the thecal sac at L4, L5, and S1 (Tr. 32, 148). These findings were not typical of defects caused by protruding disc material, and it was further noted that these findings may be of "no clinical significance" (Tr. 148). Plaintiff then underwent bilateral lumbar laminotomies and facetectomies, as well as fusions from the L–3 level down to the sacrum (Tr. 142–43) as an inpatient at Touro (*see also* Tr. 140). The discharge summary, dated September 29, 1982, reveals a diagnosis of lumbar spondylosis with radiculopathy, and the pathology report indicates a finding of "mild" degenerative arthritis (Tr. 142, 147).

Tomography testing in May 1983 revealed that the fusion was not stable with respect to the facet joints at L3–4, L4–5, and L5–S1 (Tr. 160). However, despite the less than successful fusion

procedure, Plaintiff was still considered free of complications such as nerve root impingement or compression, disc herniations, spinal stenosis, epidural fibrosis, or scarring around the spinal cord or nerve roots (Tr. 155, 160).

In December 1983, orthopaedic surgeon Bruce Razza, M.D., noted the instability of Plaintiff's fusion and opined that further surgery was necessary (Tr. 199–200). He further opined that Plaintiff would be totally disabled for one year following the recommended surgery and thereafter would be precluded from performing any manual or heavy labor, and any activity requiring lifting more than ten pounds, prolonged standing, squatting, bending, stooping, climbing, or overhead activity (Tr. 200). On March 13, 1984, Plaintiff underwent a second surgery, which consisted of anterior lumbar diskectomies and fusions at L3–4, L4–5 and L5–S1 (Tr.171–72, 196–97, 200). In January 1985, Dr. Razza opined that Plaintiff would reach maximum medical improvement (MMI) no earlier than March 1985 (Tr. 195). He estimated that Plaintiff "carries a partial permanent anatomic disability rating of approximately 40 percent as a result of his industrial injury to his lower back" (*id.*). He further opined that Plaintiff would be totally disabled from gainful employment until he reached MMI, and thereafter, Plaintiff would be permanently precluded from performing any heavy or physical labor, or any activities requiring repetitive lifting of objects weighing more than fifteen pounds, or prolonged standing, squatting, stooping, bending, sitting, or climbing (Tr. 195).

V.  DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ erred in failing to give controlling weight to the opinion of Dr. Linkous, a treating physician. Second, Plaintiff alleges the ALJ misapplied the Musculoskeletal Listings (Doc. 10 at 3).

    A.    Weighing the Opinions of Medical Experts

Plaintiff contends the ALJ erred in failing to accept Dr. Linkous' opinion that Plaintiff was disabled (*see* Doc. 10 at 9–13).

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis, 125 F.3d at 1439–41; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when

the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See* Edwards, 937 F.2d at 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See* Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion. *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether Plaintiff meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the providence of the Commissioner. 20 C.F.R. § 404.1527(e). The opinion by a treating physician that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but

that the ultimate question of whether there is disability or inability to work is reserved to the Commissioner. For instance, 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion. Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In Lewis, 125 F.3d at 1441, the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do any work, and the physician subsequently wrote a letter saying the claimant was completely disabled. To require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. Additionally, a physician's opinion on whether a person is able to work may be colored by such things as the physician's knowledge of local hiring practices, whether there are specific job vacancies, a person's reluctance to do a particular kind of work, and similar matters. These things are not properly considered by the Commissioner in determining disability. 20 C.F.R. § 404.1566. For all these reasons, a physician's opinion that his or her patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance.

      Finally, the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole. *See* Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir.

1995)).  "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Oldham v. Schweiker, 660 F.2d 1078, 1084 (Former 5th Cir. Unit B Nov. 1981).

Here, in rejecting Dr. Linkous' opinion, the ALJ initially noted that the opinion was "ambiguous and incomplete" (Tr. 33).  Indeed, a review of the entire file reflects that there are only nine (9) pages of records from Dr. Linkous (Tr. 116–24).  Of those nine pages, two pages consist of a letter to Plaintiff's attorney describing in a truncated fashion Dr. Linkous' treatment of Plaintiff from May 1976 through March 1977 (*see* Tr. 117–18), one page is a letter dated May 14, 1977 "to whom it may concern," stating that "it is doubtful [Plaintiff] will ever be able to engage in gainful employment" (Tr. 116), and the remaining pages appear to be billing records created on Florida Worker's Compensation forms that note the dates of Plaintiff's office visits, the type of treatments received (i.e., generally heat therapy and Demerol injections or medication), and the charges for Dr. Linkous' services (Tr. 119–24).  Thus, the basis for Dr. Linkous' opinion that it was "doubtful" Plaintiff could ever work is unclear.  Stated another way, the opinion is conclusory, or as the ALJ noted, "incomplete," and therefore good cause existed for discounting the opinion.[3]  Phillips, 357 F.3d at 1240–41; Edwards, 937 F.2d at 580.  Moreover, the opinion is inconsistent with Dr. Linkous' treatment records — limited as they may be.  For example, the only objective findings contained in Dr. Linkous' records, which are found in the two-paged letter and not in actual treatment records, are "mild" to "moderate" muscle spasms, "mild" to "moderate" tenderness, and a full range of motion (Tr. 117–18).  Furthermore, on September 9, 1976, Dr. Linkous noted that Plaintiff could return to normal activity with the only limitation being no heavy lifting for four to six weeks (Tr. 118).  This evidence is inconsistent with Dr. Linkous' opinion that Plaintiff was incapable of performing gainful activity.  *See* Phillips, 357 F.3d at 1240–41.

The ALJ also referred to Exhibit 2F, Dr. Linkous' records, in noting that Plaintiff was "conservatively treated."  *See* Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (an ALJ may properly consider treatment that is "entirely conservative in nature" in discrediting a claimant's

---

[3] To the extent the ALJ characterized Dr. Linkous' opinion as "ambiguous," the undersigned agrees.  As noted above, Dr. Linkous did not definitively state that Plaintiff would be precluded from ever engaging in gainful activity; he stated it was "doubtful" that Plaintiff would be able to do so (*see* Tr. 116).

Case No. 3:06cv564/LAC/EMT

testimony). Indeed, as previously noted, Dr. Linkous generally treated Plaintiff with medication, bed rest, heat therapy, and a lumbar-sacral back support (*see, e.g.*, Tr. 117, 119). Similarly, Dr. Flynn specifically characterized his treatment of Plaintiff as "conservative," and this was in June 1981 — long after Plaintiff's date last insured (Tr. 138).[4]

The ALJ additionally noted that Dr. Hartsfield, an orthopedic surgeon, provided a much more thorough physical evaluation as well as an assessment of diagnostic evidence (Tr. 31, 126–27). Plaintiff argues that the ALJ improperly gave more weight to Dr. Hartsfield's opinion simply because he was an orthopedic surgeon and Dr. Linkous was only a family practitioner (Doc. 10 at 10–11). However, it was not improper for the ALJ to comment on the fact that Dr. Hartsfield was a specialist, as more weight is generally given to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist. *See* 20 C.F.R. § 404.1527(d)(5). Moreover, the ALJ made this statement while noting, not only that Dr. Hartsfield was a specialist, but also in contrasting his opinion with the "ambiguous and incomplete" opinion expressed by Dr. Linkous (Tr. 33). Indeed, Dr. Hartsfield's report reflects that he performed a thorough physical evaluation, which resulted in a finding that Plaintiff was able to walk normally, walk on his heels and toes, squat, bend forward within two feet of the floor, and twist and extend his back fully (Tr. 126). He had "normal" motor strength in all lower extremity muscle groups, and sensory examination was "entirely within normal limits" (Tr. 126–27). Although straight leg raise testing was positive and there was tenderness in the lumbosacral area, Plaintiff had no muscle spasm (Tr. 127). Dr. Hartsfield also noted Plaintiff's x-rays were "thought largely to be negative for pathology; a negative lumbar myelogram and I think also a negative epidural venogram" (Tr. 126). Further, Dr. Hartsfield noted that x-rays revealed "only some asymmetrical facets and very slight narrowing at L5–S1" (Tr. 127). Thus, the ALJ correctly noted that Dr. Hartsfield's report was much more thorough, and that Plaintiff's physical abilities, as documented by Dr. Hartsfield, were inconsistent with an inability to work.

Plaintiff also argues that Dr. Linkous' opinion is supported by the March 1982 opinion of orthopedic surgeon Leo Flynn, M.D., that Plaintiff had a 50 percent impairment rating of the spine

---

[4]The date of this notation is partially illegible, but it appears to state June, 15, 1981 or June 15, 1982 (*see* Tr. 138); giving Plaintiff the benefit of the doubt, the court has utilized the earlier date.

Case No. 3:06cv564/LAC/EMT

(Doc. 10 at 12). However, as the ALJ noted, this opinion was rendered approximately thirty (30) months after the expiration of Plaintiff's insured status, and consequently, was not relevant to the present determination (Tr. 31). In order to prove disability for Title II benefits, an individual must prove he was disabled prior to the expiration of his insured status. *See* 20 C.F.R. § 404.101, §404.130, §404.131; *see also* Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (to be entitled to benefits, a claimant must prove she was disabled before her insurance expired).

Finally, as the court is well aware, a physician's opinion that his patient cannot work or is disabled is not a conclusive medical opinion for the purpose of Social Security benefits determinations and by itself is not entitled to special significance. *See* 20 C.F.R. § 404.1503. It is the physician's evaluation of a plaintiff's condition and the medical consequences thereof, "not their opinions of the legal consequences of his condition" on which the court must focus. Lewis, 125 F.3d at 1436. Thus, Dr. Linkous' opinion regarding Plaintiff's ability to work was certainly not binding on the ALJ.

In conclusion, because the ALJ articulated the inconsistencies on which he relied in discrediting Dr. Linkous' opinion regarding Plaintiff's ability to work, and because the ALJ's reasons are supported by substantial evidence on the record as a whole, the ALJ's finding should not be disturbed.

      B.    Musculoskeletal Listings

Plaintiff contends the ALJ erred by misapplying Musculoskeletal Listing 1.04A and/or 1.04B, as directed by the remand order of the Appeals Council (Doc. 10 at 9, 13–15). As noted earlier, by order of the Appeals Council, the ALJ was directed to reconsider Plaintiff's musculoskeletal impairments applying the new medical criteria for the relevant Listings, established September 20, 2000 (*see, e.g.*, Doc. 11 at 2). The parties agree that the relevant provisions are as follows:

> *Disorders of the Spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

>sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

>B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dyesthesia, resulting in the need for changes in position or posture more than once every 2 hours.

20 C.F.R. Part 404, Subp't P. Appx. 1, § 1.04 (Listing 1.04) (*see also* Doc. 10 at 14; Doc. 11 at 5).

Plaintiff's argument that the ALJ erred in finding that he did not meet Listing 1.04, in its entirety, is as follows:

>[Plaintiff's] lengthy and well-documented medical history clearly establishes that he was under a disability as that term is defined by the Social Security Administration. Moreover, the history and onset of complaints coinciding as they did with an acute event followed by immediate medical attention and nearly 30 years of consistent medical complaints fully support a finding that [Plaintiff] meets § 404, Subpart P, Appendix 1.04 A, as he has well-documented evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitations of the motion of the spine and positive straight-leg testing (noted by Dr. Hartsfield no less) ([Tr.] 127). Moreover, the medical history also supports a finding of disabled under [Listing] 1.04 B because [Plaintiff's] condition has been confirmed by [the] operative report of Dr. Razza as well as by pathology report of tissue biopsy [] ([Tr.] 142, 146–47).

Doc. 10 at 15 (reference to a footnote in Plaintiff's memorandum omitted).

Thus, in pertinent part, Plaintiff argues that he met the requirements of Listing 1.04A because he had documented evidence of nerve root compression, limitation of motion of the spine, and positive straight leg raise testing. However, the only finding for which Plaintiff cites evidence from the record, and for which the undersigned has found in the record, is positive straight leg raise testing (*see* Tr. 115, 127). As the ALJ noted, there is no evidence of nerve root compression during the relevant period, which is required to meet the Listing. In fact, as discussed *supra*, Dr. Hartsfield noted that Plaintiff's x-rays were largely negative for pathology, and showed only "some asymmetrical facets and very slight narrowing at L5–S1" (Tr. 126–27). Dr. Hartsfield also noted that a lumbar myelogram and an epidural venogram were also negative (Tr. 126). The ALJ noted that even a lumbar myelogram performed in September 1982, three years after Plaintiff's insured status expired, showed only "relatively minimal" findings of asymmetry in the lateral margins of the thecal sacs at L4, L5, and S1 (Tr. 32, 148). These findings were not typical of defects caused by protruding disc material, and it was noted these findings may be of "no clinical significance" (Tr.

148). Furthermore, the undersigned has found no evidence of motor loss, or sensory or reflex loss, both of which are required in order to meet the requirements of Listing 1.04A.[5] Indeed, physical examination during the relevant period showed that Plaintiff could walk normally, walk on his heels and toes, squat, bend forward within two feet of the floor, and twist and extend his back fully (Tr. 126). Additionally, he had normal motor strength in all lower extremity muscle groups, normal reflexes, and a sensory examination that was "entirely within normal limits" (Tr. 126–27). Records from Plaintiff's treating physician also show that beginning August 31, 1976, he had a full range of motion (Tr. 118). Thus, the relevant evidence of record shows Plaintiff did not have an impairment of sufficient severity to meet the requirements of Listing 1.04A.

Plaintiff also contends that the record supports a finding of disability under Listing 1.04B because his condition (i.e., spinal arachnoiditis) was confirmed by Dr. Razza's September 1982 operative report and the related pathology report. However, the records cited by Plaintiff in support, in addition to being well beyond the relevant period, do not reveal a diagnosis of spinal arachnoiditis (Tr. 142, 146–47). The diagnosis in the operative report is lumbar spondylosis with radiculopathy (Tr. 142), and the pathology report indicates findings of "mild" degenerative arthritis only (Tr. 147). The record contains no evidence that Plaintiff was ever diagnosed with spinal arachnoiditis. Therefore, the requirements under subsection B cannot be met.

In conclusion, the evidence of record does not support a finding that Plaintiff's impairment met Listing 1.04. Accordingly, the ALJ did not err in finding that Plaintiff did not have an impairment or combination of impairments that met Listing 1.04.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

---

[5]Plaintiff has not alleged in his argument, cited fully *supra*, that he had "motor loss . . . accompanied by sensory or reflex loss," which is a requirement of Listing 1.04A (note the use of the word "and" in section 1.04A, requiring that each finding (i.e., nerve root compression, limited motion of the spine, motor loss, and positive straight leg raise) exist).

At Pensacola, Florida this 5<u>th</u> day of February 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**